## IN RE ESTATE OF WYCKOFF.

(No. 2026—Decided January 28, 1958.)

*Mr. E. Clark Morrow,* for appellant.
*Mr. H. B. Hughes,* for appellee.

PUTNAM, J.   The Probate Court of Licking County, upon petition, allowed Edward Gill, appellee herein, as administrator of the estate of Robert Gill, to file a claim against James Gordon, as administrator of the estate of William E. Wyckoff, after the four-month period had elapsed, by virtue of Section 2117.07, Revised Code.   An appeal was taken to this court from that decision and judgment, and this court sustained a motion to dismiss the appeal as not being a final order, with this writer dissenting.   Thereafter the Supreme Court held that the order was appealable and remanded the cause (*In re Estate of Wyckoff,* 166 Ohio St., 354).   The case is now before this court upon the merits of the appeal.   It is perhaps superfluous to state that this court has not heretofore considered the merits of the lawfullness of the order.

The application for allowance to file a belated claim contains the following pertinent allegations:

"That he failed to present his claim to the administrator of said estate for the reason that he was under a legal disability during a part of the four months immediately succeeding the appointment of the administrator of said decedent and that he did not have actual notice of the death of the decedent or of the appointment of the administrator in sufficient time to present his claim as prescribed by Revised Code 2117.06."

The entry of the court found that the allegations in the application were true and Edward Gill was permitted to file his claim. No opinion was written. Consequently, we are confronted with the fact that the court found in the affirmative on all the allegations above set forth, and this appeal brings all these findings under review. These findings are:-

1. That the appellee was under a legal disability as defined by law.

2. That the appellee did not have actual notice of the appointment of the administrator of the estate of Wyckoff.

3. That the appellee did not have actual notice of the death of the decedent, Wyckoff.

The facts of the case as shown by the record are briefly as follows: On February 26, 1954, Robert Gill, the son of Edward Gill, was in an automobile accident involving the car he was driving and a car which Wyckoff was driving. Wyckoff was killed. He was the only occupant of his car. Robert Gill was killed, as were two other occupants of his car; only his sister survived. On April 2, 1954, James Gordon was appointed administrator of the estate of Wyckoff by the Probate Court of Licking County. On May 18 Edward Gill was appointed administrator of the estate of Robert Gill. No claim was filed against the estate of Wyckoff until after the four-month period from April 2, 1954, but a claim was filed within the nine-month period thereafter. In 1941 Edward Gill was adjudged mentally incompetent by the Probate Court of Perry County and committed to a mental institution. Thereafter, he was allowed to go home on a trial visit, and he never returned to the institution. He thereafter held various jobs as a laborer and seemingly acted normal, but there was never any adjudication of restoration to sanity until May 11, 1954. After the death of his son and presumably upon advice of counsel, Edward Gill made application through the Probate Court of Perry County to be restored to legal status. Those proceedings were entirely regular, and after due notice and full hearing the order restoring him to mental competency was made. Then on May 18, upon application, he was appointed administrator. Thus, from April 2 to May 11, Edward Gill was legally mentally incompetent, a period of 40 days during the four-month period of the administratorship of the appellant (Wyckoff's administrator).

Since Edward Gill resided in Perry County and Wyckoff's administrator was appointed in Licking County and the advertisement thereof was only in the Johnstown paper in Licking County, the testimony of Edward Gill that he had no actual notice of the appointment can be very well sustained by the evidence. However, the Supreme Court has held in the case of *In re Estate of Marrs*, 158 Ohio St., 95, 107 N. E. (2d), 148, that the section under discussion (Section 2117.07, Revised Code) means that actual notice of either the appointment of the administrator or of the death of the decedent is sufficient to invoke the application of the statutory limitation.

Therefore, the next question is, whether under the evidence Edward Gill had actual notice of the death of Wyckoff.

Edward Gill testified on direct examination positively that he did not have such actual notice. However, on cross-examination he testified, in part, as follows:

"Q. Did you ever find out how many people were involved in the accident? A. I had heard that there were five people in the two cars.

"Q. Had you heard how many were killed? A. I heard that there was one survivor and that was Sally.

"Q. Do you remember where you heard that? A. No, I don't, just at the time it was discussed a good bit with people, it was openly discussed, but as far as any knowledge of it I don't know, I didn't see the bodies of the Whartons so I don't know, really.

"Q. But the accident was discussed and the fact that four out of five were killed or died as a result of the accident. A. That is right.

"Q. Do you remember whether that was within a week or within two weeks or within a month after the accident that you knew that? A. I have an idea that was pretty soon. It was strongly discussed a good many times, people would ask, strange people would ask, you know what I mean, you would meet people that you knew and they would ask you about it.

"Q. The fact that four out of five died in the accident was rather common knowledge? A. Oh, yes.

"Q. That information you knew—this happened in February, and that information you knew in May, would you say? A. Well, I don't believe I would put it off until May.

"Q. You knew it before May, in other words? A. I had heard it.

"Q. Right away, February, or in March—you knew it in April, May and June? A. Yes.

"Q. Did you ever find out the name of the fellow in the other car that was involved in the accident, and who died? A. I wrote the man's name down today, I saw it on the paper so I wrote it down. I knew it was Wyckoff, but I couldn't have told you who it was until today, and I wrote it down.

"Q. You never had known him before and never knew him? A. No.

"Q. You knew his name as Wyckoff? A. Yes."

The appellee, Edward Gill, is bound by this cross-examination. In the case of *Winkler* v. *City of Columbus,* 149 Ohio St., 39, at page 44, 77 N. E. (2d), 461, the court states:

"We are of the opinion that the Court of Appeals labored under a misapprehension as to the quality of the evidence adduced from plaintiff while on the stand. Evidently the court's attention was not called to the fact that plaintiff's answers on cross-examination constitute admissions against interest or as it is sometimes called, judicial admissions.

"The Court of Appeals assumed that because plaintiff testified one way in chief and contrarily on cross-examination, the case should be left to the jury to choose between her conflicting statements. That would be proper in the case of an ordinary witness, but where the testimony involved is that of the plaintiff and the plaintiff's testimony whether in chief or cross-examination, discloses negligence on the part of plaintiff contributing directly to her injury the *fact* has been settled and the matter becomes a question of law to be determined by the court."

Consequently, we hold that Edward Gill as an individual did, prior to April 2, 1954, and up until he was appointed administrator on May 18, have actual knewledge of the death of William Wyckoff under the evidence presented; and the court in holding to the contrary was in error.

The next question is, can this knowledge of Edward Gill as an individual be imputed to him in his representative capacity as administrator, after May 18, 1954? This is an intriguing

question, and we know of no exact precedent. It involves a further question hereinafter presented. Nevertheless, we are of the opinion that since knowledge goes to the mind of the individual and the individual is one and the same person as the administrator, it would be a splitting of hairs to say that the right hand does not know what the left hand is doing. We think and hold that the knowledge of Edward Gill as an individual is attributable to him as administrator. Consequently, he cannot prevail on this ground.

This brings us to the final proposition. Section 2131.02, Revised Code, provides as follows:

" 'Legal disability' as used in Chapters * * * 2117 * * * of the Revised Code includes the following:

" * * *

"(B) Persons of unsound mind;

" * * * "

Section 5123.57, Revised Code, provides in part as follows:

" * * * no patient in a hospital operated by the Department of Public Welfare, Division of Mental Hygiene, or a patient on trial visit therefrom, shall be competent to enter into any agreement or execute a contract, deed, or other instrument unless it has been approved and allowed by the court committing him by an order entered on the journal of said court. A certified copy of such order of the court shall be attached to such contract, deed, or instrument.

"The discharge of a patient shall not operate as a discharge of a legally appointed guardian of the person or estate of such person."

Section 2117.07, Revised Code, provides in part as follows:

" * * * The court may authorize such claimant to present his claim to the executor or administrator if, on the hearing, the court finds as follows:

" * * *

"(C) That the claimant was subject to any legal disability during such period or any part thereof."

It is our judgment that where one is committed to a mental hospital for mental incompetency he is of unsound mind within the above definition of legal disability. This mental incompetency, under Section 5123.57, Revised Code, continues until

it is finally dissolved by an order of court, no matter what the actual condition of the individual. Consequently, in the instant case, Edward Gill as an individual was legally a person of unsound mind until May 11, 1954, when that disability was removed, a period of about 40 days of the administratorship of the Wyckoff estate. Subdivision (C) of Section 2117.07, Revised Code, uses the word, "claimant," and also the phrase, "or any part thereof." This excludes the idea that if the claimant had sufficient opportunity while of sound mind reasonably to present the claim he would be barred. The words, "or any part thereof," must be given their liberal meaning. If the claimant were under disability for one day of the four-month period and that at the beginning thereof, the court in its discretion could allow the claim to be filed under the statute, and this without the application of any principles of equity which the courts have held not to be applicable in such cases. (See the case of *In re Estate of Natherson*, 102 Ohio App., 475, 134 N. E. (2d), 852, the second paragraph of the syllabus.)

This presents the next question as above indicated, and that is whether the legal disability of Edward Gill as an individual is attributable to him as a "claimant." We have given consideration to the case of *Stange, Admr., v. Campbell, Admr.*, 75 Ohio App., 316, 62 N. E. (2d), 185. The factual situation in the *Stange case* is not the same as in the instant case and the point decided is not the same, but at page 320 of the *Stange case* the court holds in substance that an individual heir for whose benefit a cause of action in wrongful death is instituted cannot be a claimant. The claimant is the personal representative. Here again we find no exact precedent in point. However, inasmuch as we have decided that the knowledge of Edward Gill as an individual is attributable to him as administrator, we can see no logical reason why the incapacity of Edward Gill as an individual should not be attributable to him in his representative capacity and as claimant. Here again unsoundness of mind is an individual matter. A person can hardly be of unsound mind in a representative capacity unless he is so in an individual capacity. The only other possible interpretation would be that the statute means that one became of unsound mind after he became the administrator. In view of the liberal construction

to be given to the statute we do not think that it should be so limited by judicial interpretation.

In any event we are on the horns of a logical dilemma. If we hold that knowledge is not attributable to the claimant in its strict sense from one in an individual capacity, then the court was right in allowing the claim to be filed for lack of knowledge, because there is not sufficient evidence to show knowledge after May 18. If we hold to the contrary, as we do, and apply the imputability to both knowledge and soundness of mind, then the court was right in allowing the filing on the latter ground. To hold one way in one instance and another way in the other instance would be seemingly inconsistent.

For the above reasons the judgment of the court below is affirmed.

*Judgment affirmed.*

McClintock, P. J., and McLaughlin, J., concur.