Elder, Appellant, v. Baker, Appellee.

(No. 25783—Decided March 22, 1962.)

*Mr. Robert Merkle*, for appellant.
*Mr. Robert B. Loeb*, for appellee.

Skeel, J. This appeal comes to this court on questions of law from a judgment entered for the defendant in the Euclid Municipal Court, the case having been tried to the court without the intervention of a jury. The action is one seeking a commission (the plaintiff being a licensed real estate broker) for procuring a purchaser for a house and lot said to be the property of the defendant, located at 1033 Galewood Drive, Cleveland, Ohio. The plaintiff was employed by verbal contract over the telephone to find a purchaser for the premises at a price in the neighborhood of $12,500.

The plaintiff, in seeking a purchaser, contacted a Mr. Earl R. Dyer, a tenant residing on the premises, who indicated an interest in purchasing the property if it could be bought on a land contract with the further proviso that the monthly payment should not exceed $125. These negotiations were reported to Mrs. Baker who indicated that the terms would be satisfactory, but she was informed by the plaintiff that the down payment would have to be sufficient to take care of the real estate commission, as well as two personal debts of hers, which she indicated had to be paid, which items together totaled $907. During these negotiations, Dyer indicated he would have to get the down payment from his mother. After some delay in the negotiations, as shown by the record, it developed that the de-

fendant sold the premises under a land contract to Lena Dyer (mother of the plaintiff's prospect) for $12,500, $400 down and the balance to be payable in monthly installments of $125 or more with a provision that the entire balance should become due and payable August 20, 1961. The monthly payments were to be applied first to taxes, second to insurance, third to interest, and finally to principal, and in that order.

Upon trial of the issues, the defendant admitted in her opening statement that the plaintiff was a licensed real estate broker and that he was contacted by her and an open listing of her property was given to the plaintiff. The date of the listing was in the month of July 1958. It is admitted that the plaintiff contacted Earl R. Dyer who was then a tenant on the listed property, and that negotiations were had wherein he expressed a desire to purchase the property for $12,500 on a land contract. There is also no dispute that the defendant sold the premises to Lena Dyer, mother of Earl R. Dyer, by land contract for the price indicated, the monthly payments to be $125, including taxes, insurance, interest and principal. The date of the contract was August 7, 1958, which was less than one month from the date of the listing. The only defense relied upon and asserted by the defendant is that she, Marjorie Baker, was mentally incompetent, having been declared mentally ill by the Probate Court of Cuyahoga County, and ordered to the Cleveland Receiving Hospital of the State Institute of Psychiatry on September 5, 1957. This claim was put in issue by plaintiff's reply. There was an allegation in the answer that the defendant was discharged by the Probate Court as recovered February 2, 1961. It was stipulated by the parties in the opening statement that the Probate Court appointed the defendant, Marjorie Baker, executrix of her husband's estate on March 13, 1958, and that she successfully administered the estate.

The defendant was called for cross-examination at the beginning of plaintiff's case. She testified that she listed the property for sale with the plaintiff and that there was some conversation about selling the property on land contract to a Mr. Earl R. Dyer, and that his mother would furnish the down payment. The balance of plaintiff's case was presented by the testimony of the plaintiff who detailed his activities in making a sale of the property to Mr. Dyer and that some time early in

August, he was told by the defendant that she had sold the property to Earl Dyer's mother.

The defendant was the only witness called to present her defense. In direct examination, the full extent of her testimony was to the effect that she did not deal with the plaintiff in making the sale of her property to the person who bought it. On cross-examination, the only evidence dealing with the alleged mental incapacity was the following:

"Q. What caused your mental condition? A. It was a long story and I have no intention of repeating it here. My husband committed suicide and it is very upsetting and I am not going into it.

"Q. What was the date of it? A. September 5th, 1957, he had me committed and I stayed in the hospital three months, but he sent me to the wrong hospital.

"Mr. Loeb: Objection. This is asking for mental testimony.

"The Court: Sustained.

"Q. I just wanted —. A. I didn't think so but the doctors did.

"Mr. Merkle: I think that is all the questions.

"The Court: Thank you. Anything further, gentlemen?

"(Witness excused.)

"Mr. Merkle: Nothing, Your Honor. Do you want to give us about two minutes apiece to argue?"

There is no stipulation in the record as to what, if anything, was before the Probate Court, and the record of the proceeding in the Probate Court, if there be such record, was not produced in evidence in this case. The claims in the pleadings and opening statements on the subject of mental incapacity are not supported by any evidence whatsoever. We are in complete accord with the law of the case of *In re Estate of Wyckoff*, 105 Ohio App., 212, which states in paragraphs three and four of the syllabus the following:

"3. A person committed to a mental hospital for mental incompetency is of unsound mind within the definition of legal disability contained in subdivision (C) of Section 2117.07, Revised Code, and subdivision (B) of Section 2131.02, Revised Code, and for which a belated claim may be filed.

"4. Under the provisions of Section 5123.57, Revised Code,

such mental incompetency continues until it is finally dissolved by an order of court, and a person *legally* a person of unsound mind (even though not necessarily so in fact) during a part of the four-month period who, during such period, is, by proper application on order of court, legally restored to mental competency, may be allowed to present a late claim under Section 2117.07, Revised Code, as a person 'subject to any legal disability during such period or *any part thereof.*' "

However, until an adjudication of mental incapacity is established and a commitment to one of the state institutions lawfully made under the law, the provisions of Section 5123.57, Revised Code, do not apply. Certainly a party to an action is presumed competent until it is established by credible evidence that there has been an adjudication and commitment of such party by the Probate Court.

For the foregoing reasons, the judgment of the trial court is reversed and, this court proceeding under the authority of Section 2505.27, Revised Code, finding that the only defense of the defendant to plaintiff's petition being affirmative in character, that is mental incapacity, and there being no evidence to support such affirmative defense, this court proceeds to enter the judgment that should have been entered by the trial court for the plaintiff in the sum of $625, with interest from August 6, 1958.

*Judgment reversed.*

KOVACHY, P. J., and HURD, J., concur.